# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24-3 |
| v. | : | |
| MIKAL MCCRACKEN,<br>a/k/a "Kal," | : | **FILED UNDER SEAL** |
| AMIN MUSE,<br>a/k/a "Miyn," a/k/a "Miyns," | : | |
| ALEEM ABDUL-HAKIM,<br>a/k/a, "Fatleem," | : | |
| DEAN FOSQUE,<br>a/k/a "30," | : | |
| KAVON COLEMAN,<br>a/k/a "Ski," | : | |
| AMADOU MOUSSA,<br>a/k/a "Adadou Moussa,"<br>a/k/a "Amadou Amadou," | : | |
| DAVON SQUIRE | | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT ABDUL-HAKIM's MOTION TO SUPRESS (ECF 200)

**AND NOW**, this       day of                    , 2025, after reviewing the submissions

by the government and defense counsel it is hereby **ORDERED** that the Defendant's Motion to

Suppress Evidence is **DENIED**.

BY THE COURT:

_____

**HONORABLE JOHN F. MURPHY**
**United States District Court Judge**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24-3 |
| v. | : | |
| MIKAL MCCRACKEN, | : | **FILED UNDER SEAL** |
|     a/k/a "Kal," | | |
| AMIN MUSE, | : | |
|     a/k/a "Miyn," a/k/a "Miyns," | | |
| ALEEM ABDUL-HAKIM, | : | |
|     a/k/a, "Fatleem," | | |
| DEAN FOSQUE, | : | |
|     a/k/a "30," | | |
| KAVON COLEMAN, | : | |
|     a/k/a "Ski," | | |
| AMADOU MOUSSA, | : | |
|     a/k/a "Adadou Moussa," | | |
|     a/k/a "Amadou Amadou," | : | |
| DAVON SQUIRE | | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States of America, through its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Joseph LaBar and Katherine Shulman, Assistant United States Attorneys for the district, respectfully submits this response in opposition to the defendant's motion to suppress historical cell phone location data, obtained as a result of a search warrant, based on his claim that the search warrant lacked probable cause. His claim is without merit.

I.    **FACTS**

A.  **Background**

On July 24, 2024, a grand jury returned a 70-count Superseding Indictment against the

defendants, Mikal McCracken, Amin Muse, Aleem Abdul-Hakim, Dean Fosque, Kavon

Coleman, Amadou Moussa, and Davon Squire, arising from a large-scale carjacking conspiracy

during which the enterprise was responsible for approximately 60 gunpoint carjackings. Thirty of

the carjackings (including the carjacking/murder), along with a second murder, are charged in

the superseding indictment, as both overt acts in support of the conspiracy and as substantive

crimes. The crimes named in the superseding indictment involve: completed gunpoint

carjackings, seven of which involved shootings, to include one murder of a carjacking victim,

three non-fatal woundings, and three carjackings where the victims were not hit by the gunfire;

two attempted but unsuccessful carjackings with guns, one of which involved a non-fatal

wounding; the murder of a potential witness; a slew of identity thefts, and a scheme to export

carjacked and stolen cars for sale in Africa.

This violent carjacking spree lasted between October 2021 and February 2022 and

involved two murders. The first murder occurred on February 6, 2022, when named co-

defendants Mikal McCracken, Amin Muse, and Aleem Abdul-Hakim, along with Jonathan

Akubu, charged elsewhere, carjacked victim ███████████. and shot and killed him in the

process. McCracken pulled the trigger. In their haste to flee the scene in ███████████ car,

which was already running, the carjackers failed to take ███████████ key fob (which they

needed to continue operating ███████████ car after it was shut off). Accordingly, they

enlisted the help of a locksmith, ███████████, to make them a new key for the car. However, on

February 12, 2022, the police located and recovered ███████████ vehicle shortly after the

key was made. Members of the conspiracy, including named defendants McCracken and Muse, and Jonathan Akubu, charged elsewhere, feared that ███████ would be identified through forensics by law enforcement since he touched the car while making the replacement key. They believed that ███████ would cooperate with law enforcement investigating the killing, and so they plotted to kill him, and murdered him on February 12, 2022, to prevent him from betraying them. Akubu pulled the trigger.

McCracken is charged in 46 counts, which include both murders, 20 additional carjackings, the overall conspiracy, and another carjacking referenced in the overt act section of the Superseding Indictment. Muse is charged in 23 counts, which include both murders, an additional 8 carjackings, the overall conspiracy, and another carjacking referenced in the overt act section of the Superseding Indictment. Abdul-Hakim is charged in 13 counts, which include the murder of ███████, 5 additional carjackings, and the overall conspiracy. Dean Fosque (McCracken's older brother) is charged in 19 counts, which include 9 carjackings, the overall conspiracy, and an additional carjacking referenced in the overt act section of the Superseding Indictment. Coleman is charged in 8 counts, which include 4 carjackings, and the overall conspiracy. Moussa is charged is 23 counts, including aiding and abetting 7 carjackings and/or murders, exporting or attempting to export the carjacked cars to Africa, and the overarching conspiracy. Davon Squire is charged in 2 counts, which include the interstate transportation of one of the carjacking victim's stolen cars, and the overarching conspiracy.

**B.  Abdul-Hakim's Historical Cell Site Information**

Part of the evidence in the case consists of mapping and analysis of certain defendants' historical cell site location information, compiled in the report of the FBI's Cellular Analysis Survey Team ("CAST"), hereinafter "CAST Report." Defendant Aleem Abdul-Hakim's

historical cell site location information is mapped in the CAST Report.





**C.  <u>The Search Warrant For Abdul-Hakim's Cell Site Location Information</u>**

The affidavit for Abdul-Hakim's Historical Cell Site Warrant contained more than

sufficient probable cause for this search (indeed, as noted a local magistrate had already found

sufficient probable cause to actually arrest Abdul-Hakim for the murder ██████████████). First,

the affidavit describes the FBI case agent's significant past experience, and the items requested from T-Mobile. Then, the affidavit details the sprawling investigation conducted by the Carjacking Task Force, consisting of the FBI, ATF, and Philadelphia Police Department ("PPD.") The warrant then specifically details numerous crimes under investigation as being related to this conspiracy, including:









The affidavit provided ample information to establish probable cause to obtain Abdul-Hakim's historical cell site information, and the Magistrate Judge correctly issued it. Further, even if the Magistrate Judge's determination of probable cause was somehow faulty (which it was not), the good faith exception to the exclusionary rule renders the defendant's motion moot. Thus, the defendant's Motion to Suppress should be denied.

II.    **ARGUMENT**

    A.  **The Affidavit Accompanying The Arrest Warrant Is Sufficient And Showed A Substantial Basis For Probable Cause.**

Probable cause is a flexible, common-sense standard. Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been…committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S. Ct. 1302, 1310–11, 93 L. Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L. Ed. 543, 39 A.L.R. 790).

Probable cause is not a high bar: "It requires only the 'kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014), *quoting Florida v. Harris*, 568 U.S. 237, 243 (2013). Because probable cause is a "practical, nontechnical conception," it is concerned with "the factual and practical

considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231.

A search conducted pursuant to a search warrant should be upheld if the judicial officer who issued the warrant had a "substantial basis" for concluding that probable cause existed for the search. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). This is so because "(t)he task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. *See also United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).

This Court's review of the issuing judge's probable cause determination is deferential and "quite limited." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). The duty of the reviewing court is simply to ensure that the magistrate, whose determination should receive "great deference," had a substantial basis for concluding that probable cause existed. *Id*. Furthermore, "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 238. The Court should "[k]eep in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place" and "uphold the warrant as long as there is substantial basis for a fair probability that evidence will be found." *Id*.

Direct evidence linking the crime with the place to be searched is unnecessary; probable cause often is inferred from the circumstances and common sense. *Id*. Probable cause can be, and often is, inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide

[evidence]." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001), *citing United States v. Jones*, 994 F.2d 105, 1056 (3d Cir. 1993) (citation and quotation marks omitted).

Here, the magistrate did not err. She had probable cause to approve the search warrant for Abdul-Hakim's phone records. ████████████████████████████████



Abdul-Hakim contends that the facts listed above did not support the magistrate's conclusion that probable cause existed to obtain his historical cell site data. He is simply wrong—the facts listed above are the textbook definition of probable cause. ████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

Abdul Hakim's arguments can essentially be summarized as follows, and will be rebutted in turn:

First, Abdul Hakim argues that the affidavit lacks evidence that his phone was in the area of the crimes he committed at the relevant times. He states that the "most glaring and startling omission from [the affidavit] is any evidence that the 2552 cellphone was in the area of any of the carjackings at a time proximate to the criminal conduct." (Defense Motion, p. 8.) This argument is perplexing. The affidavit was submitted in support of a warrant seeking *exactly that information*—Abdul-Hakim's historical cell site data. The Fourth Amendment does not forbid using a warrant to solve a crime, and Abdul-Hakim cites no case to the contrary. *See United States v. Long*, 774 F.3d 653, 659 (10th Cir. 2014) ("And we know of no authority that officers cannot search a place where there is likely to be contraband or evidence of a crime unless they can identify the likely perpetrator.") If the affiant already knew where Abdul-Hakim's phone was at the time of the crimes, he wouldn't have needed to obtain the warrant in the first place. Further, the search warrant affidavit shows that the evidence included leads to the reasonable conclusion that his phone likely was in those areas because he is on video in the area, and he is making phone calls with other known accomplices around the times of the crimes.

Second, Abdul-Hakim next complains that the affidavit describes a heavyset offender at all three of the crime scenes discussed in the affidavit, but does not conclusively connect Abdul-Hakim as being that heavyset offender. ████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████



Abdul-Hakim incorrectly states that "there is no description or identification by a victim or other eyewitness who recalled a 'heavyset' participant that suggests Mr. Abdul-Hakim participated in the crimes." (Defense Motion, p. 8.) He is wrong.

Abdul-Hakim next makes a similar complaint about the references to his gait in the affidavit. He argues that the affidavit notes his gait, but nobody who knows him watched the video and identified him. This argument misses the mark.





In sum, the magistrate had ample evidence from which to conclude that probable cause was established to allow a search of T-Mobile's records from Abdul-Hakim's historical cell site information based on his known phone number, and she acted appropriately in finding probable cause and approving the warrant. This Court's deferential review of her conclusion should result in Abdul-Hakim's motion being denied.

**B.   The Good Faith Exception to The Exclusionary Rule Would Apply Even If The Affidavit Of Probable Cause Was Lacking, Which It Is Not.**

Even if the warrant were not supported by the ample probable cause discussed above, suppression would still not be appropriate. Where an officer, acting with objective good faith, obtains a search warrant from a magistrate judge, and acts within the scope of that warrant, evidence seized is admissible under the good faith exception to the exclusionary rule even if the warrant is later found to lack probable cause. *See United States v. Leon*, 468 U.S. 897, 920-24 (1984); *United States v. Caesar*, 2 F.4th 160, 169 (3d Cir. 2021).

The good faith exception to the exclusionary rule instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993); se*e United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1107 (3d Cir. 1989). The test for whether the good faith exception applies is

"whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Hodge*, 246 F.3d at 307. *See also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 145 (3d Cir. 2002).

The sole purpose of the exclusionary rule is to deter unlawful police conduct. *See Leon*, 468 U.S. at 906; *see also Herring v. United States*, 555 U.S. 135, 147-48 (2009) (exclusionary rule does not apply when a search was unlawful due to mistakes and negligence but not a reckless disregard of constitutional rights). Thus, suppression is a remedy of last resort, which is to be used for the sole purpose of deterring future constitutional violations. Only when the deterrence value of suppression outweighs the heavy costs it imposes should the court suppress evidence. *See Davis v. United States*, 564 U.S. 229, 236-37 (2011); *Herring*, 555 U.S. at 140-41. The *Herring* Court explained that "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system, as the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id*.

Thus, under the good faith exception, suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *Hodge*, 246 F.3d at 305. The Supreme Court cautioned in Leon that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (citations omitted). If an officer has obtained a warrant and executed it in good faith, "there is no police illegality and thus nothing to deter." *Id*. at 921.

As noted above, the test for the good faith exception is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Caesar*, 2 F.4th at 169; *see also Hodge*, 246 F.3d at 307; *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999). In this case, this Court should examine the totality of the circumstances, "consider[ing] not only any defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known." *Caesar*, 2 F.4th at 170, *quoting United States v. Franz*, 772 F.3d 134, 147 (3d Cir. 2014). The Court bears "in mind that police officers are not trained attorneys and cannot be expected to second-guess a magistrate's probable cause determination." *Caesar,* 2 F.4th at 170.Thus, it is only in rare circumstances that a warrant is so flawed that an officer "will have no reasonable grounds for believing it was properly issued." *Leon*, 468 U.S. at 923.

The Third Circuit has identified four narrow situations in which an officer's reliance on a warrant is not reasonable: "(1) when a magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[;]' or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." *Id.* 307 F.3d at 146, *quoting Williams* at 74 n.4. None of these are present here.

Here, Abdul-Hakim's only argument challenging the good faith of the executing investigators is a rehash of his baseless challenge to probable cause. He claims that the affidavit was so bereft of probable cause that good faith should not apply. As discussed at length above,

he is wrong. There was ample probable cause set forth in the affidavit, and a reasonable officer could trust the validity of the warrant and execute the search.

The Third Circuit has explained: "These are the rare circumstances in which, although a neutral magistrate has found probable cause to search, a lay officer executing the warrant could not reasonably believe that the magistrate was correct." *Id*. The threshold for establishing this "exception to the good faith rule 'is a high one.'" *United States v. Henry*, No. 21-3254, 2023 WL 2770817, at *3 (3d Cir. Apr. 4, 2023), *cert. denied*, 144 S. Ct. 208 (2023) (*quoting Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)). "The burden is on the defendant to show that the magistrate judge made an error 'so obvious that a law enforcement officer, without legal training, should have realized, upon reading the warrant, that it was invalid and should thus have declined to execute it.'" *Id*. (*citing United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 146 (3d Cir. 2002)).

Abdul-Hakim cannot meet this burden. The Third Circuit has identified "very few situations in which an affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" but such situations include "affidavits based on conclusory assertions, a single piece of outdated evidence, or an uncorroborated or unreliable anonymous tip." *United States v. Sarraga-Solana*, 263 F. App'x 227, 231 (3d Cir. 2008) (collecting cases). In contrast, the affidavit here, as explained above, was (1) "based on current information," (2) was far from a "bare bones" document, and (3) the issuing court properly concluded it established probable cause to support a search. *United States v. Loy*, 191 F.3d 360, 369 (3d Cir. 1999).

"[I]t must . . . be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards

applicable to lawyers." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). *See*

*United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004) (upholding district court's denial of

motion to suppress due to applicability of good faith exception); *United States v. Kepner*, 843

F.2d 755, 764 (3d Cir. 1988) (reversing district court's suppression order when agent relied in

good faith on valid search warrant); *United States v. Wecht*, No Crim. 06-0026, 2006 WL

1669879 (W.D. Pa. Jun. 13, 2006) (denying motion to suppress evidence recovered from

physician's office because search team members acted reasonably and in good faith in relying on

warrant and affidavit).

Any reasonably well-trained officer would have believed that the affidavit of probable

cause and search warrant were validly issued, based on ample probable cause, by a neutral and

detached magistrate. Good faith applies.

## III.    CONCLUSION

For the reasons set forth above, the government respectfully requests that this Court deny

defendant's motion to suppress.


Respectfully submitted,


DAVID METCALF
United States Attorney


*/s Joseph LaBar*
JOSEPH LABAR
Assistant United States Attorney


*/s Katherine Shulman*
KATHERINE SHULMAN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below

through the Electronic Case Filing (ECF) system and/or via email:

Mark Greenberg, Esquire
651 E. Township Line Road Number 81
Blue Bell, PA 19422
marksgreenberg@aol.com
*Attorney for Mikal McCracken*


Thomas Kenny, Esquire
Kenny Burns & McGill
1500 John F. Kennedy Boulevard, Two Penn Center Suite 520
Philadelphia, PA 19102
tkenny@kennyburnsmcgill.com
*Attorney for Amin Muse*


William Brennan, Esquire
Law Offices of William J. Brennan
1600 Locust Street
Philadelphia, PA 19103
brennanlaw@philadelphiacriminallaw.com
*Attorney for Aleem Abdul-Hakim*


Alan Tauber, Esquire
Law Office of Alan J. Tauber, P.C. Pennsylvania
718 Arch Street Suite 702n
Philadelphia, PA 19106
atauber@atauberlaw.com
*Attorney for Aleem Abdul-Hakim*


Martin Isenberg, Esquire
Scher & Isenberg, L.L.C.
1528 Walnut Street, Suite 1100
Philadelphia, Pennsylvania 19102
martin@scherandisenberg.com
*Attorney for Dean Fosque*


Terri Pawelski, Esquire

123 South Broad Street, Suite 2800
Philadelphia, PA 19109
tpawelski@saxtonstump.com
*Attorney for Kavon Coleman*

Kenneth Edelin, Esquire
1219 Spruce Street
Philadelphia, PA 19107
kedelin@mtvlaw.com
*Attorney for Amadou Moussa*

Coley Reynolds, Esquire
121 S. Broad Street, Suite 1200
Philadelphia, PA 19107
cor@reynoldsfirm.com
*Attorney for Davon Squire*


*/s/ Joseph LaBar*
Joseph LaBar
Assistant United States Attorney

*/s/ Katherine Shulman*
Katherine Shulman
Assistant United States Attorney


Date: October 2, 2025.

1